**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-3652-WJM

ISAAC MENDOZA HERNANDEZ,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Denver Contract Detention Facility, *et al*.

Respondents.

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Isaac Mendoza Hernandez's Verified Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1); and Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion") (ECF No. 3.) Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF"); George Valdez, in his official capacity as Field Office Director for the Denver Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as Secretary of U.S. Department of Homeland Security ("DHS"); David Venturella, in his official capacity as Acting Director of ICE; and Todd Blanche, in his official capacity as Attorney General of the United States (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 11.) Mendoza Hernandez submitted a reply, (ECF No. 12), without the Court's leave, but the Court will consider it nonetheless solely in the interest of justice (ECF No. 13).

For the following reasons, the Petition is granted.

## I. BACKGROUND[1]

Mendoza Hernandez is a native and citizen of Mexico. (ECF No. 1 at ¶ 24.) He "entered the United States without inspection in approximately 1997 when he was six years old." (*Id.*) He was raised in Southern California and graduated from high school in 2009. (*Id.*) He received Deferred Action for Childhood Arrivals ("DACA") and employment authorization from 2013 to 2017. (*Id.*)

He is married to a United States citizen and they are raising two young United States citizen daughters. (*Id.* at ¶ 25.) His youngest daughter has type 1 diabetes, so Mendoza Hernandez serves as her full-time caregiver because her condition requires "constant monitoring, insulin management, regular medical appointments, and vigilant daily care." (*Id.* at ¶ 25.)

In August 2024, in a Weld County criminal case, Mendoza Hernandez pleaded guilty to first degree criminal trespass, a class 1 misdemeanor under Colo. Rev. Stat. § 18-4-502(1)(b). (*Id.* at ¶ 26; ECF No. 3-1 at 123.) "He was issued a summons rather than arrested, voluntarily appeared for every required court proceeding, accepted responsibility for his conduct, and fully complied with every condition imposed by the criminal court. He successfully completed six months of unsupervised probation, completed all required educational classes, paid all court-ordered costs and fines, and satisfied every obligation imposed by the sentencing court. No term of incarceration was imposed." (ECF No. 1 at ¶ 26.)

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

In a different case, the Weld County District Attorney dismissed a DUI case against Mendoza Hernandez, "and it resulted in neither a conviction nor any finding of criminal liability." (*Id.* at ¶ 27; *see* ECF No. 3-2 at 4.)

DHS initiated proceedings against Mendoza Hernandez and nevertheless relied on the dismissed DUI case in its Form I-213. (ECF No. 1 at ¶ 27.) On July 27, 2026, an immigration judge ("IJ") held a custody redetermination hearing. (*Id.* at ¶ 28.) Before the hearing, Mendoza Hernandez "submitted approximately 128 pages of documentary evidence demonstrating his rehabilitation, extensive family and community ties, stable residence, employment history, eligibility for relief from removal, role as the primary caregiver for his daughter with Type 1 diabetes, and limited criminal history." (*Id.*) He also submitted evidence showing the DUI case was dismissed and "that the Form I-213 materially misstated his criminal history." (*Id.*)

At the hearing, Mendoza Hernandez's "counsel objected to the admission of the Form I-213 because it had not been authenticated pursuant to 8 C.F.R. § 287.6 and because it contained multiple material inaccuracies." (*Id.* at ¶ 29.) The IJ admitted the Form I-213 over counsel's objection. (*Id.*) DHS argued that the 2024 misdemeanor conviction "remained sufficiently recent to establish dangerousness" and, without reasoning, that he was a flight risk. (*Id.*) Mendoza Hernandez's counsel responded that "he was neither a danger to the community nor a flight risk" because of his "nearly thirty years of residence in the United States, his single misdemeanor conviction, successful completion of every criminal sentence requirement, rehabilitation, extensive family and community ties, stable residence, eligibility for cancellation of removal, and his role as the full-time caregiver for his medically fragile U.S. citizen daughter." (*Id.* at ¶ 30.)

The IJ "expressly found that Mr. Mendoza Hernndez was not a flight risk." (*Id.* at ¶ 31.) The IJ explained, "I don't believe that the Respondent is a risk of flight. But I do think he's a danger, and I am gonna be denying bond, based on 2024 and 2026 [sic] too close together in time for me to not find a danger." (ECF No. 3-4 at 11; *see* ECF No. 1 at ¶ 31.)

The IJ denied bond in a written one-word order: "Danger." (ECF No. 3-5 at 1; *see* ECF No. 1 at ¶ 32.).

Mendoza Hernandez challenges the legality of his detention and asks the Court to order his immediate release from custody. (ECF No. 1 at 35.) In the alternative, among other relief, he asks the Court to "schedule him for a custody hearing pursuant to 8 U.S.C. § 1226(a) before this Court within seven days, regardless of whether ICE conducted an initial custody determination, and at which Respondents must demonstrate by clear and convincing evidence that continued custody of any kind is necessary." (*Id.* at 35–36.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that

custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Mendoza Hernandez contends that his detention is unlawful and violates his Fifth Amendment Due Process Rights (Counts I through III). (*See generally* ECF No. 1.) His specific claims are as follows. In Count I, Mendoza Hernandez alleges a violation of his Fifth Amendment substantive due process rights. (*Id.* at 33.) In Count II, he alleges a violation of his Fifth Amendment procedural due process rights. (*Id.* at 33–34.) In Count III, he alleges a violation of the Administrative Procedure Act under 5 U.S.C. § 706(2)(A). (*Id.* at 35.)

The Court determines that it need only reach Counts I and II to resolve the Petition. The Court also notes that Mendoza Hernandez has asserted no statutory claim under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, in this action.

### A. Fifth Amendment Due Process Claims

Mendoza Hernandez argues that the custody hearing violated his Fifth Amendment due process rights because the IJ

> (1) failed to conduct the individualized, forward-looking assessment required to determine whether Mr. Mendoza Hernandez presently posed a danger to the community; (2) failed to meaningfully consider material evidence relevant to the danger analysis; (3) improperly relied on a dismissed criminal case that was neither reliable nor probative of present dangerousness; and (4) impermissibly required Mr. Mendoza Hernandez to bear the burden of proof.

(ECF No. 1 at ¶ 2.) The Court agrees.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1250 (10th Cir. 2026) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The Tenth Circuit recently explained:

> The Due Process Clause of the Constitution forbids the Government from "depriv[ing]" any "person . . . of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [this] Clause protects." *Zadvydas*, 533 U.S. at 690. Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so. *Id*. If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a "strong special justification." *Id.*

*Id.* at 1249.[2]

The Court will "review the nature and structure of the [IJ's decision] for the minimal indicia of due process." *Mejia v. Baltazar*, 2026 WL 1361514, at *2 (D. Colo. May 15, 2026) (quoting *Lopez v. Paulk*, 830 F. Supp. 3d 1356, 1368 (M.D. Ga. 2026)) (alteration in original). To be clear, the Court does not act as an appellate court in reviewing the IJ's decision. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under [§ 1226(a)] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole . . . ."). But "[w]hether [a petitioner] received the due process to which he was entitled 'is not a matter of

[2] "To the extent it matters," the Tenth Circuit "assume[d] for the sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process. In that regard, our discussion of constitutional avoidance sounds in substantive due process." *Id.* at n.12. The Court makes the same assumption for the purposes of resolving the Petition.

discretion' and is subject to judicial review." *Mejia*, 2026 WL 1361514, at *1 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)). And so, "the Court must independently review the IJ bond proceedings and whether the burden of proof [the IJ] used comported with due process." *Lopez*, 830 F. Supp. 3d at 1368.

Under *Mathews v. Eldridge*, courts must consider three factors when evaluating whether a petitioner has made out a procedural due process violation: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

At the outset, the Court concludes that Respondents have waived any arguments they might otherwise have had in response to Mendoza Hernandez's claims by expressly declining to respond to Mendoza Hernandez's claims and his arguments in support of those claims. *See McKissick v. Yuen,* 618 F.3d 1177, 1189 (10th Cir. 2010) (holding an intentional failure to develop arguments adequately in the district court results in waiver). (*See* ECF No. 11 at 1 ("For purposes of this specific case, Respondents are not submitting a brief in opposition to the Petition detailing the facts and circumstances of this case."); ECF No. 12 at 2 ("Respondents waive and concede all due process claims that Mr. Mendoza Hernandez presented in his petition.").)

1. <u>Substantive Due Process (Count I)</u>

All three *Mathews* factors support Mendoza Hernandez's claims that the IJ violated his procedural due process rights. Although the *Mathews* factors often apply more readily in the context of procedural due process claims, the first *Mathews* factor

sounds in substantive due process.

As to the first factor, Mendoza Hernandez's continued detention undermines his private interest in his physical freedom. A person's physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Vizguerra-Ramirez v. Baltazar*, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025) (same); *Carlon v. Kramer*, 2025 WL 2624386, at *3 (D. Neb. Sept. 11, 2025) (same); *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (same); *Velasco Lopez*, 978 F.3d at 851 (finding, in assessing the first *Mathews* factor, that "[t]he deprivation [petitioner] experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours."); *Hamdi*, 542 U.S. at 529 (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention); *Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Moreover, the Government is detaining Petitioner in a facility that the undersigned has already found "strongly resemble[s] penal confinement." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 940 (D. Colo. 2025).

In light of the above, the Court concludes the first *Mathews* factor weighs heavily in favor of Mendoza Hernandez on his Count I substantive due process claim.

2. <u>Procedural Due Process (Count II)</u>

To resolve Count II of the Petition, the Court applies the second and third *Mathews* factors.

Applying the second *Mathews* factor, the procedures the IJ employed carried the

risk of erroneous deprivation. The Court agrees with Mendoza Hernandez that the IJ's one-word bond order is patently deficient on its face. It is wholly bereft of any analysis whatsoever. Even the IJ's oral ruling is unclear as to what specific evidence the IJ relied on to base her decision.

Mendoza Hernandez takes issue with the IJ's failure to conduct the individualized, forward-looking assessment required for custody redetermination hearings under 8 U.S.C. § 1226. Because the IJ failed to conduct any individualized assessment, Respondents have circumvented their constitutional obligation to provide a "strong special justification" for Mendoza Hernandez's detention. *Santillan Quiroz*, 180 F.4th at 1249.

He also contends that his due process rights were violated because of the IJ's failure to consider material evidence relevant to the danger analysis and her improper reliance on the dismissed DUI case. The Court agrees. The IJ found Mendoza Hernandez to be a danger based on an offense for which Mendoza Hernandez had already completed his sentence and an offense which was dismissed. The IJ's reliance on the dismissed DUI case carries the risk of erroneous deprivation because "the traditional due process concern with accuracy . . . is meant to protect *the individual interest*." *Granillo Chavarria v. Baltazar*, 824 F. Supp. 3d 1170, 1175 (D. Colo. 2026) (emphasis in original) (quoting *Benham v. Ledbetter*, 785 F.2d 1480, 1487 (11th Cir. 1986)); *see Speiser v. Randall*, 357 U.S. 513, 525–26 (1958) ("Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of producing a sufficiency of proof in the first instance . . . .").

True, as the IJ noted, the DUI case was dismissed after the date the Form I-213 was created. (ECF No. 3-4 at 4.) Even so, the DUI case was dismissed by the date the IJ held the hearing. Whether intentionally or by negligent oversight, the IJ should not have blinded herself to the uncontroverted fact the DUI case had been dismissed without any determination of culpability on the part of Mendoza Hernanez whatsoever. Although it was acceptable for the IJ to have considered the misdemeanor offense, she utterly failed to explain why the misdemeanor offense, whose sentence and all attendant court-imposed requirements had already been completed, demonstrated that Mendoza Hernandez was a danger to the community. After all, Mendoza Hernandez submitted hundreds of pages of exhibits refuting DHS's argument that he was dangerous.

The IJ's failure to consider the fact that the DUI offense attributed to Mendoza Hernandez was dismissed undercuts the due process concern with accuracy. The IJ clearly erred in denying bond by predicating her decision on the DUI case, without any reference to the fact that the case was ultimately dismissed and that Mendoza Hernandez never pleaded guilty and was never convicted. And though the IJ also relied on the misdemeanor offense, for which Mendoza Hernandez completed the sentence, she provided no reasons as to why that offense would show he was a danger.

In the Petition, Mendoza Hernandez argues that the IJ required him "to overcome detention rather than requiring the Government to justify continued confinement. The record contains no indication that the Government was required to prove by clear and convincing evidence that Mr. Mendoza Hernandez presently posed a danger or risk of flight." (ECF No. 1 at ¶ 72.) The IJ's one-word order is manifestly unclear as to whether

she placed any burden of proof on either party at all. Functionally, the IJ's decision placed the burden of proving a negative onto Mendoza Hernandez: that he was not a flight risk and that he was not dangerous. *See L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183–84 (D. Colo. 2024) ("[P]roving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern.") (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 31 (1st Cir. 2021)). In doing so, the IJ deprived Mendoza Hernandez of due process.

The INA and its implementing regulations are silent as to who bears the burden of proof at a bond hearing. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19(d). But as this Court has said before and as the weight of authority of this District supports, it is the Government's burden to justify a noncitizen's continued detention at a bond hearing. *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026); *see L.G.*, 744 F. Supp. 3d at 1186 ("[I]n order to continue detaining Petition[er] under § 1226(a), due process requires that the Government is required to establish that continued detention is justified by clear and convincing evidence."); *Espinoza Ruiz v. Baltazar*, 2025 WL 3294762, at *2 (D. Colo. Nov. 26, 2025) (ordering that the Government would carry the burden for bond hearing under 8 U.S.C. § 1226(a)); *Loa Caballero v. Baltazar*, 2025 WL 2977650, at *9 (D. Colo. 2025) ("During such [§ 1226(a)] hearing, the Respondents bear the burden of justifying detention."); *Mendoza Gutierrez v. Baltasar*, 2025 WL 2962908, at *14 (D. Colo. Oct. 17, 2025) ("[T]he Government shall bear the burden of justifying [detention] by clear and convincing evidence of dangerousness of risk of flight"); *Garcia Cortes v. Noem,* 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (same); *cf. Santillan Quiroz*, 180 F.4th at 1249 ("Due process requires that, whenever the Government

detains somebody, it must have a good reason for doing so. . . . If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a 'strong special justification.'")

The Court observes that another judge in this District has found insufficient a bond order that supplied far more reasoning than what the Court currently has before it. In *Arredondo v. Baltazar*, Judge R. Brooke Jackson of this District Court ordered a new bond hearing where the IJ issued a multi-page order but failed to set forth in its ruling "what evidence *presented by respondents* carried their burden of proof to demonstrate that movant is a danger to the community or a flight risk by clear and convincing evidence." *Cervantes Arredondo v. Baltazar*, Civil Action No. 25-cv-3040-RBJ, ECF No. 26 at 1 (emphasis in original). To be sure, the IJ in that case did consider evidence that the judge found to support denying bond. But the *Arredondo* court faulted the IJ for failing to regard which "party proffer[ed] the evidence or the order in which it is considered." (*Id.* at 8–9.) Put simply, if the procedures followed by the IJ in *Arredondo* were deficient—notwithstanding the cited record evidence in support of the decision—surely the procedures followed by the IJ in this case manifestly fail to pass Fifth Amendment muster. Indeed, here, "[t]here is no indication . . . that the IJ . . . even placed any burden on the Government at all." *Mejia*, 2026 WL 1361514, at *2.

As to the third *Mathews* factor, it is true that the Government has an interest in ensuring noncitizens appear at future immigration proceedings and in preventing danger to the community. *Zadvydas*, 533 U.S. at 690. "It would stand to reason if a noncitizen was neither a flight risk nor dangerous, there would be no government or public interest in detention." *L.G.*, 744 F. Supp. 3d at 1185. But as stated above, the IJ refused to

engage with the dismissal of the DUI offense and Mendoza Hernandez's hundreds of pages of documentary evidence, which refuted DHS's argument that he was dangerous.

For these reasons, the Court concludes that Mendoza Hernandez was not afforded the minimal indicia for due process at his bond hearing before the IJ.

**B. Remedy**

As discussed above, the Government waived its arguments as to Mendoza Hernandez's claims by declining to substantively address them. (ECF No. 11 at 1–2.) However, it submits that the "appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) or else release Petitioner." (*Id.*)

Another bond hearing will not serve as adequate relief for this Petitioner. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d

545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Mendoza Hernandez's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 8) is MADE ABSOLUTE and Mendoza Hernandez's Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief to Mendoza Hernandez pursuant to Counts I and II of the Petition. The Court does not reach the merits of Count III;

3. The Motion (ECF No. 3) is DENIED AS MOOT;

4. **By no later than this Sunday, August 23, 2026**, Respondents shall IMMEDIATELY RELEASE Mendoza Hernandez on his own recognizance, along with all his personal belongings, subject only to the conditions of his pre-existing conditional parole. **No additional conditions of release shall be imposed on Mendoza Hernandez by Respondents.** Respondents shall further facilitate Mendoza Hernandez's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address,

5. Respondents are ENJOINED from re-arresting or re-detaining Mendoza Hernandez unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Mendoza Hernandez shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Mendoza Hernandez from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7. Should Mendoza Hernandez believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **September 18, 2026**. Respondents shall file a response by no later than **October 9, 2026**, and Mendoza Hernandez shall file a reply by no later than **October 23, 2026**; and

8. Judgment shall enter in Mendoza Hernandez's favor and against Respondents on **September 4, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 21st day of August, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge